USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb. 21, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ELIJAH GREEN,                            :
                                         :
                    Plaintiff,           :
                                         :
     -against-                           :     10 Civ. 3653 (JFK)
                                         :     **OPINION AND ORDER**
CITY OF YONKERS, NEW YORK, CITY OF       :
YONKERS POLICE DEPARTMENT, POLICE        :
OFFICER D. LYONS, individually and in    :
his capacity as a Police Officer in the  :
City of Yonkers Police Department,       :
POLICE OFFICER THOMAS CLEARY,            :
individually and in his capacity as a    :
Police Officer in the City of Yonkers    :
Police Department, SERGEANT SUSAN        :
PINTO-TULINO, individually and/or in her :
capacity as a Sergeant in the Yonkers    :
Police Department, and LIEUTENANT HENRY  :
TRABUCCO, individually and/or in his     :
capacity as a Lieutenant in the Yonkers  :
Police Department,                       :
                                         :
                    Defendants.          :
----------------------------------------X

APPEARANCES:


     FOR PLAINTIFF

     Mark A. Rubeo, Jr., Esq.
     Reisman, Rubeo & McClure, LLP
     151 Broadway
     Hawthorne, N.Y. 10532

     FOR DEFENDANTS

     Mark W. Blanchard
     Corporation Counsel
     City Hall Room 300
     Yonkers, N.Y. 10701

**JOHN F. KEENAN, United States District Judge:**

Before the Court is the City of Yonkers, Yonkers Police Department, Officers David Lyons ("Lyons") and Thomas Cleary ("Cleary"), Sergeant Susan Pinto Tulino ("Tulino"), and Lieutenant Henry Trabucco's ("Trabucco") (collectively, "Defendants") motion for summary judgment on each of Plaintiff Elijah Green's ("Green" or "Plaintiff") various claims under 42 U.S.C. § 1983 ("§ 1983") and state law.  For the reasons that follow, the motion is granted in all respects.

### I. Background

On July 8, 2008, just before 7 p.m., the Yonkers Police Department received an anonymous report that an unattended child was on the fire escape of 189 Saratoga Street in Yonkers, New York. (Def.'s Rule 56.1 Statement ¶ 1).  Two of the Defendants, Lyons and Cleary, responded to the report.  Once the officers arrived at 189 Saratoga Street, they observed Green's daughter Alyssa, who was then two-and-a-half-years old, on the fifth-floor fire escape, but state that they were unable to climb the fire escape to bring her to safety. (Id. ¶ 2).  Ultimately, a neighbor retrieved Alyssa and carried her into her bedroom in the fifth-floor apartment uninjured. (Pl.'s Rule 56.1 Statement ¶ 4).  It was later discovered that the screen on the window in

Alyssa's room had been torn, leaving an opening about the size of a basketball. (Id.).

The officers state that, unable to climb the fire escape, they entered Green's apartment through the front door, walked into Alyssa's room, and then questioned Green and the neighbor. (Def.'s Rule 56.1 Statement ¶¶ 3, 6-7).  According to Green, however, Cleary and Lyons climbed into Alyssa's bedroom through the window, and immediately yelled at Green and the neighbor to get against the wall.  There, they conducted a patdown of Green and his neighbor, and proceeded to question the men. (Pl.'s Rule 56.1 Statement ¶ 4).

During the questioning at Green's apartment, Green told the officers that he had returned home from work thirty minutes earlier, and Alyssa's mother, LaToya McNeill ("McNeill"), informed him that she had put Alyssa to sleep. (Id. ¶¶ 3, 5, 9). Green told the officers that he drank one beer while reviewing the mail and watching television, but never heard any noises from Alyssa's room, nor did he in any way check on her. (Id. ¶ 9).  Cleary and Lyons reported that they observed two to three cans or bottles of beer on a table in the bedroom, although they could not determine whether any were empty. (Def.'s Rule 56.1 Statement ¶ 9).  After completing the questioning, the officers placed Green under arrest. (Id. ¶ 11).

Green states that McNeill was in their bedroom when the questioning began, and later came into Alyssa's bedroom. (Pl.'s Rule 56.1 Statement ¶ 8).  Green and McNeill both allege that the officers told Green that "someone's got to pay for this," referring to Alyssa's being on the fire escape. (McNeill Aff. ¶ 14).  After the officers arrested Green, McNeill confronted the officers and asked them why Green was being arrested.  Green and McNeill allege that the police replied, "Do you want us to take you too?  If we take you we are taking the kids." (Id. ¶ 15).

At the Yonkers Police Department, the Lieutenant on duty, Trabucco, assisted Cleary and Lyons in determining the charges against Green.  Cleary and Lyons then prepared a Crime Investigation Report and Domestic Incident Report, which was reviewed and certified by the Sergeant on duty, Tulino.  Green was charged with reckless endangerment of a child in the second degree and endangering the welfare of a child. (Pl.'s Rule 56.1 Statement ¶¶ 12-13).

Green was arraigned in Yonkers City Court.  The arraignment court set bail at $1500 and imposed a one-year protective order, mandating that Green stay away from Alyssa. (Id. ¶ 15).  Green was incarcerated for twenty-one days before his family could raise sufficient funds to post bail. (Id.).  The Westchester County District Attorney's Office prosecuted Green in Yonkers

4

City Court on July 16, 2009.  After a two-day jury trial, Green was acquitted of all charges.

According to Green, the arrest and subsequent prosecution caused him to lose two months of employment and wages. (Id.) Because the order of protection barred him from seeing Alyssa, Green could not return to his home.  As a result, he alleges, he slept on the streets or at friends' homes during the period he could not return home. (Id.).

## II. Discussion

Green brings claims under 42 U.S.C. § 1983 ("§ 1983") for false arrest, malicious prosecution, abuse of process, and deprivation of liberty without due process against all individual defendants.  He has also alleged that Cleary and Lyons, Trabucco, and Tulino conspired to violate his rights under § 1983.  Green extends his § 1983 claim to the City of Yonkers and the Yonkers Police Department, made applicable to municipalities under Monell v. Dept. of Social Services of the City of N.Y., 436 U.S. 658 (1978).  Finally, Green has asserted state law claims for malicious prosecution against all defendants except Trabucco.

### A. Summary Judgment Standard

Summary judgment is warranted when "there is no genuine issue as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue exists for summary judgment purposes "where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).  Thus, when determining whether such factual issues exist, the court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element for which it bears the burden of proof. Celotex, 477 U.S. at 322-23.  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original).

## B. § 1983 Claims

Plaintiff's first cause of action asserts constitutional violations under § 1983 against Trabucco, Tulino, Cleary, and Lyons, for:  (1) false arrest, (2) malicious prosecution, (3) abuse of process, and (4) deprivation of liberty without due process of law.

### i. Defendants Trabucco and Tulino

Plaintiff has asserted § 1983 claims against Trabucco and Tulino, and the Defendants argue that Trabucco and Tulino cannot be liable because they lack the requisite personal involvement. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983'" and that a complaint must allege such personal involvement. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  In the context of § 1983, personal involvement consists of direct participation or "failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Id.

If it is determined that a § 1983 violation occurred, both Trabucco and Tulino would satisfy "personal involvement"

requirement for liability.  While not directly involved in Green's arrest, they prepared the post-arrest report and determined the charges against Plaintiff, permitting the arrest and detention of Plaintiff to move forward.  See Warheit v. City of New York, 271 F. App'x 123 (2d Cir. 2008) ("[A] supervisory official may be held liable for a subordinate's conduct in several ways, such as failing to 'remedy the wrong' upon learning of the violation, creating or . . . acting with 'gross negligence' or 'deliberate indifference' in relation to the subordinate's constitutional violations." (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994))).

### ii. Probable Cause

The existence of probable cause is "a complete defense to [a civil rights action arising from an arrest]," whether brought under state law or § 1983. Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).  "Probable cause exists when [one] ha[s] knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008).  A district court must analyze the "totality of the circumstances" then known to the arresting officers in deciding whether probable cause

8

existed. <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 162 (2d Cir. 2002); <u>Howard v. City of New York</u>, No. 08 Civ. 6085, 2010 WL 1914747, at *1 (S.D.N.Y. May 5, 2010) ("In considering whether there is probable cause for an arrest, courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'" (quoting <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 569 (2d Cir. 1996))).

Because the facts relating to the inquiry into probable cause are not in dispute, there is no issue of material fact that precludes summary judgment. The only genuine factual dispute pertains to the manner in which the officers entered the Plaintiff's apartment -- this issue, however, is not material to the question of whether probable cause existed. The parties agree that the officers observed Plaintiff's two-and-a-half-year-old daughter on the fire escape, a torn window screen in the child's room, and beer cans in the Plaintiff's bedroom; during questioning, they learned that the Plaintiff had consumed at least one beer since he got home.

Based upon these undisputed facts, Cleary and Lyons had reason to believe an offense had been committed, and thus executed the arrest with probable cause. Under New York law, the crimes of reckless endangerment and endangering the welfare of a child do not contemplate a child's injury as a condition

precedent.  Rather, both charges require that the parent acted
unreasonably. See N.Y. Penal Law § 120.20 ("[a] person is guilty
of reckless endangerment in the second degree when he recklessly
engages in conduct which creates a substantial risk of serious
physical injury to another person."); id. § 260.10 ("Being a
parent, guardian or other person legally charged with the care
or custody of a child . . . he fails or refuses to exercise
reasonable diligence in the control of such child to prevent him
from becoming . . . a "neglected child," . . . or a "person in
need of supervision."). Plaintiff had not checked on his
sleeping daughter, but rather was drinking beer in his bedroom
while the toddler was on the fifth floor fire escape, giving
rise to sufficient grounds to believe that the Plaintiff was not
taking reasonable steps to ensure the safety of his daughter.
Indeed, that Alyssa had managed to access the fire escape from a
torn screen in her bedroom window could certainly cause Cleary
and Lyons to draw the conclusion that Alyssa was not receiving
the supervision or attention that she needed.  Trabucco and
Tulino, having acted on information received from Cleary and
Lyons, also acted on probable cause.

    Even if there were a question of fact as to whether there
was probable cause to either arrest or charge the Plaintiff,
summary judgment would be granted under the doctrine of

qualified immunity.  Qualified immunity shields government
employees acting in their official capacity from suits for
damages under § 1983, unless their conduct violated clearly
established rights that an objectively reasonable official would
have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  If
the Defendants had not been acting on probable cause, they are
entitled to qualified immunity if "(a) it was objectively
reasonable for the officer to believe that probable cause
existed, or (b) officers of reasonable competence could disagree
on whether the probable cause test was met." Amore v. Novarro,
624 F.3d 522, 536 (2d Cir. 2010) (citing Walczyk v. Rio, 496
F.3d 139, 163 (2d Cir.2007)) (defining the qualified immunity
standard as "arguable probable cause").

Cleary and Lyons proceeded reasonably in arresting the
Plaintiff after discovering Alyssa on the fire escape.  An
officer who responds to a 911 report, observes a child on a fire
escape five floors above the pavement, and learns that the
father was drinking beer in his bedroom and did not check on his
daughter, could reasonably reach the conclusion that the father
had either recklessly created a risk of injury to his child or
failed to exercise reasonable diligence in caring for his child.
Therefore, Cleary and Lyons are entitled to qualified immunity
for their arrest of Green.  Similarly, Trabucco and Tulino are

protected by qualified immunity because there is no evidence that the Defendants learned any new information subsequent to the arrest that would make the decision to detain and charge Green unreasonable.

## C. §§ 1983, 1985 Conspiracy Claims

To prove a § 1983 conspiracy, a plaintiff must show:  (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  The elements of a claim under § 1985 are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  The conspiracy must also be motivated by racial animus. Brown v. City of Oneonta, 221 F.3d 329, 341 (2d Cir. 1999).  A plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000).

12

Plaintiff has not presented any reason to support his allegation that there was an agreement among the Defendants to violate Green's constitutional rights.  The Plaintiff has not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the Defendants.  For example, he asserts only three reasons to believe that the individual Defendants were members of a conspiracy, without even alleging any communication among the parties.  Moreover, he has not demonstrated that these actions were motivated by racial animus.  Therefore, his conspiracy allegation must fail under both § 1983 and § 1985. See Webb v. Gord, 340 F.3d 105 (2d Cir. 2003) (granting summary judgment where Plaintiff set forth only conclusory, vague, and general allegations of a conspiracy).

### D. Monell Claim

Municipalities, such as the City of Yonkers, can be liable under § 1983 "if the alleged offending conduct was undertaken pursuant to 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers . . . , [or] governmental 'custom' even though such a custom has not received formal approval through the . . . [municipality's] official decisionmaking channels.'" Thomas v. City of New York, No. 09 Civ. 3162, 2010 WL 5490900, at *14

(S.D.N.Y. Dec. 22, 2010) (quoting <u>Monell v. New York City Dep't</u> <u>of Social Servs.</u>, 436 U.S. 658, 690 (1978)) (alterations in original).  A plaintiff need not point to an express rule or regulation, but can show "that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law,' or that a discriminatory practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" <u>Patterson v. County of Oneida, New</u> <u>York</u>, 375 F.3d 206, 226 (2d Cir. 2004) (quoting <u>Sorlucco v. New</u> <u>York City Police Dep't</u>, 971 F.2d 864, 870-71 (2d Cir. 1992)). In other words, Plaintiff must prove "that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." <u>Thomas</u>, 2010 WL 5490900, at *14.

Green has not adduced sufficient evidence to defeat summary judgment on his <u>Monell</u> claim against the City of Yonkers.  In the relevant parts of the Complaint, Green alleges that the City "had in effect <u>de facto</u> policies, practices and customs exhibiting deliberate indifference to the Constitutional right of individuals . . . " (Complaint ¶ 53).  These conclusory allegations, however, are unsupported by any evidence in the record.  Indeed, Green has not pointed to any specific policy, practice, or custom that would support this <u>Monell</u> claim.

14

Therefore, the City of Yonkers is entitled to summary judgment on this claim.

Plaintiff has named the Yonkers Police Department a Defendant in his malicious prosecution and Monell claims. Defendant accurately contends that these claims cannot stand. "[A] police department is an administrative arm of the municipal corporation," and cannot be sued for malicious prosecution or under Monell "because it does not exist separate and apart from the municipality and does not have its own legal identity." Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citations omitted) (addressing malicious prosecution claims); Griffith v. Sadri, No. 07 Civ. 4824, 2009 WL 2524961 (E.D.N.Y. Aug. 14, 2009) (addressing Monell claims).  Therefore, the Yonkers Police Department is entitled to summary judgment with respect to all the causes of action in which it is named.

### E. State Malicious Prosecution Claim

Plaintiff's final cause of action seeks relief under state law for malicious prosecution.  Under New York law, "[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Colon v. City of New York, 468 N.Y.S.2d 453, 455 (1983).  As the Court explained above, the Defendants acted on probable cause.

Moreover, even in the absence of probable cause, the Defendants are also entitled to qualified immunity for the reasons discussed above. Phillips v. DeAngelis, 331 F. App'x 897, 897 (2d Cir. 2009) ("[E]ven if the plaintiffs made out a prima facie case of malicious prosecution . . . defendants would be entitled to the defense of qualified immunity."). Therefore, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim.

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to all counts. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:  New York, New York
        February 21, 2011

JOHN F. KEENAN
United States District Judge